# IN THE UNITED STATES COURT OF APPEALS
# EIGHTH CIRCUIT

| | | |
|---|---|---|
| JOHNNY A. JOHNSON, | ) | |
| *Appellant,* | ) ) ) | No. 23-2664 |
| v. | ) ) | CAPITAL HABEAS |
| DAVID VANDERGRIFF, Warden, | ) ) ) | **Pending Execution Date:** **August 1, 2023 (6:00 PM - central)** |
| *Appellee.* | ) | |

## MOTION FOR STAY OF EXECUTION

Now comes Appellant, Johnny A. Johnson, by and through undersigned counsel, and respectfully moves this Honorable Court for a stay of execution while this Court considers the appeal[1] from the Order of the United States District Court for the Eastern District of Missouri, dated July 17, 2023, (R. Doc. 23), denying his first petition for habeas corpus asserting his incompetence to be executed under *Ford v. Wainwright*, 477 U.S. 399, 417 (1985); *Panetti v. Quarterman*, 551 U.S. 930, 959-60 (2007); and *Madison v. Alabama*, 139 S. Ct. 718, 722 (2019). Mr. Johnson's execution is scheduled for August 1, 2023.

## BACKGROUND

Mr. Johnson believes Satan is using the State of Missouri to execute him to bring about the end of the world, which the voice of Satan has confirmed to him.

---

[1] Mr. Johnson has concurrently filed an application for a certificate of appealability ("COA").

1

R. Doc. 22-1, at 54. According to the only mental health professional who has evaluated Mr. Johnson and is qualified to offer an opinion as to Mr. Johnson's competency, Dr. Bhushan Agharkar, M.D., Mr. Johnson does not rationally understand the reason for his execution. *Id.* Mr. Johnson has suffered from severe mental illness—a schizophrenia spectrum disorder—for his entire adult life, in addition to significant cognitive and developmental delays during childhood. *Id.* at 9-49, 53. His history is replete with suicide attempts and pervasive mental illness featuring auditory hallucinations, delusions, and disorganized thought. *Id.*

During his evaluation of Mr. Johnson, Dr. Agharkar confirmed his diagnoses, explaining that Mr. Johnson suffers from a "combination of conditions" including "an extensive delusional belief system involving paranoid, grandiose, and bizarre beliefs" and "disorganized thought processes and thought blocking." *Id.* at 54.[2] Dr. Agharkar elaborated, "His beliefs about why he is to be executed are rooted in delusional thinking, the product of a severe psychotic mental illness and cognitively impaired brain." *Id.* at 53. Furthermore, "His brain damage/dysfunction does not allow him to rationally weigh and deliberate or reason through his decisions and thinking." *Id.* at 54.

---

[2] Dr. Agharkar visited Mr. Johnson a second time on July 15, 2023, and confirmed Mr. Johnson was still suffering from the same delusions.

2

Given Dr. Agharkar's findings, Mr. Johnson filed a petition for habeas corpus in the Missouri Supreme Court asserting that, because of his delusional beliefs surrounding the reason for his execution, he is incompetent to be executed. Dr. Agharkar's uncontroverted conclusion that Mr. Johnson lacks a rational understanding of the reason for his execution and Mr. Johnson's undisputed history of severe mental illness more than satisfy the required substantial threshold showing under *Panetti*. The principal evidence the State submitted to counter Dr. Agharkar's conclusion was an affidavit a page-and-a-half in length by a prison counselor—who, under Missouri law, was unqualified to offer such an opinion— applying an awareness standard rejected by the *Panetti* Court rather than the correct rational understanding standard. R. Doc. 3-4, at 2.

In holding that Mr. Johnson did not establish the threshold showing of incompetence, the Missouri Supreme Court based its decision on an unreasonable determination of the facts before it, and the decision was both contrary to and an unreasonable application of clearly established federal law. The court conflated the threshold inquiry with the ultimate question of Mr. Johnson's incompetency, ignored the materially indistinguishable facts between *Panetti* and Mr. Johnson's case, and unreasonably—and erroneously—concluded that Mr. Johnson's medical records contained not "a single" instance of the type of delusions Dr. Agharkar observed. *State ex rel. Johnson v. Vandergriff*, 668 S.W.3d 574, 579 n.7 (Mo. banc

3

2023). The court further based its opinion on the legally unqualified statement of a counselor employed at Potosi Correctional Center who had not evaluated Mr. Johnson's competency and who applied the standard rejected in *Panetti*.

Mr. Johnson filed his first habeas petition asserting his incompetency to be executed in the United States District Court for the Eastern District of Missouri on June 30, 2023. In its July 17, 2023 opinion, the district court denied Mr. Johnson's petition based on its view that Mr. Johnson did not overcome 28 U.S.C. § 2254(d), in many instances parroting the Missouri Supreme Court's non-unanimous opinion.

As more fully set forth in his application for a COA, reasonable jurists could disagree with the district court's opinion affirming the Missouri Supreme Court's 6-1 decision and find that his right to due process under the Fourteenth Amendment was violated by the denial of a fair hearing to prove his incompetency to be executed. Furthermore, because his execution while incompetent would violate the Eighth Amendment's prohibition on cruel and unusual punishment, a stay of execution should issue so this Court can address these critically important questions of law on appeal.

## DISCUSSION

I. **This Court should grant a stay of execution to adequately consider Mr. Johnson's non-frivolous appeal.**

This Court should grant Mr. Johnson a stay to permit a thorough and reasoned assessment of his appeal. A stay is justified when a petitioner presents "substantial grounds on which relief may be granted." *Barefoot v. Estelle,* 463 U.S. 880, 895 (1983). This Court should grant a COA when "jurists of reason would find it debatable whether the petition[er] states a valid claim of the denial of a constitutional right, and [if] jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Put more simply, a COA should issue if "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

In *Barefoot,* the Supreme Court made clear that federal courts "need not, and should not, . . . fail to give non-frivolous claims of constitutional error the careful attention that they deserve" and when the court is "unable to resolve the merits . . . before the scheduled date of execution, the petitioner is entitled to a stay of execution to permit due consideration of the merits." 463 U.S. at 888-89. Mr. Johnson's claim of constitutional error is non-frivolous, and an appeal on the merits of this first habeas petition (to raise a competency claim)[3] cannot properly

---

[3] Mr. Johnson's irrational beliefs about the reason for his execution only became relevant once an execution date was set. Mr. Johnson's incompetency claim was thus not ripe until the execution date was set on April 19, 2023. *Davis v. Kelley*, 854 F.3d 967, 971 (8th Cir. 2017) ("*Ford* and its progeny focus on the inmate's competency at the time of execution.") (citing *Stewart v. Martinez-Villareal*, 523

5

be done before the scheduled execution on August 1, 2023. *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996).

The "critical question" is whether the claims are "palpably incredible" and "patently frivolous or false." *Blackledge v. Allison*, 431 U.S. 63, 76 (1977). If the petition is not frivolous, the petitioner is "entitled to have his allegations fairly tested." *O'Blasney v. Solem*, 774 F.2d 925, 926 (8th Cir. 1985) ("If the petition is not frivolous and alleges facts which, even though unlikely, would justify granting the writ, then the petitioner is entitled to have his allegations fairly tested.").

Mr. Johnson's claim is far from "patently frivolous." Not only did the only expert qualified to evaluate Mr. Johnson find that he does not rationally understand the reason for his execution, but the credibility of Mr. Johnson's claims is underscored by the dissent from the Missouri Supreme Court's unreasonable denial. Such a dissent is presumed reasonable, as noted by Chief Justice Roberts in a recent opinion: "Reasonable minds may disagree with our analysis—in fact, at least three do." *Biden v. Nebraska*, 2023 U.S. LEXIS 2793, *43 (June 20, 2023) (referring to the three dissenting justices). The warden agrees that a dissent shows that reasonable jurists could disagree. R. Doc. 13, at 4 ("[T]he dissent shows, at

---

U.S. 637, 644-45 (1998)); *Nooner v. Norris*, 499 F.3d 831, 834 (8th Cir. 2007) (citing *Panetti*, 551 U.S. at 942-43; *Martinez-Villareal*, 523 U.S. at 643). This requirement means that Mr. Johnson's current petition is properly classified as a first habeas petition. *Nooner,* 499 F.3d at 499; *see also Morgan v. Javois*, 744 F.3d 535, 537-38 (8th Cir. 2013).

most, that fairminded jurists can disagree."). Because a reasonable jurist disagreed with the Missouri Supreme Court's decision, Mr. Johnson's claim cannot be patently frivolous, and a stay must issue.

In addition, reasonable jurists could conclude that the decision of the Missouri Supreme Court rested on an unreasonable determination of the facts and was both contrary to and an unreasonable application of clearly established federal law. The Supreme Court has held, "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The Court further held: "A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id.* A state court decision is objectively unreasonable when it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

As explained in more detail in the COA application, the non-unanimous conclusion that Mr. Johnson did not meet the minimum threshold standard for incompetency (1) is contrary to *Panetti* and *Madison*, (2) is an objectively unreasonable application of *Panetti*, and (3) is based on an unreasonable

7

determination of fact. The Missouri Supreme Court erroneously conflated the threshold stage with the ultimate merits determination of competency to be executed. Moreover, despite the at least 15 different references to delusions related to those Mr. Johnson expressed to Dr. Agharkar, including at least five of the *same delusion*, the court stated Mr. Johnson's medical records contained no instances of the type of delusions Dr. Agharkar reported.

Then, even though the threshold showing requires less than the ultimate inquiry into incompetency, *see Panetti*, 551 U.S. at 949-50, the court discounted Dr. Agharkar's report in favor of an affidavit from a Department of Corrections counselor, Ashley Skaggs, who was not qualified as a matter of Missouri law (which must be respected) to render an opinion on Mr. Johnson's competency, conducted no competency evaluation, and relied on the standard rejected in *Panetti* rather than the required "rational understanding" standard. The court also ignored the serious conflict of interest and ethical issues posed by Skaggs's affidavit, as a contractee of Appellee tasked to both treat Mr. Johnson while (without his knowledge or his counsel's consent) purporting to assess his competency to be executed.

Because reasonable jurists could find that both the Missouri Supreme Court and the District Court's decisions relied on unreasonable determinations of fact and were contrary to and an unreasonable application of established federal law, this

8

Court should grant a COA. Furthermore, as evidenced by the findings of the only expert qualified to evaluate Mr. Johnson—that he does not rationally understand the reason for his execution—and the reasonable state court dissent, this appeal is not frivolous. This Court should grant a stay of execution to review Mr. Johnson's application for a COA and the merits of his appeal.

As to whether this Court is able to resolve the merits of the appeal before the scheduled date of the execution, Eighth Circuit Rule 47A(a) does permit the court to summarily dismiss a frivolous appeal. But as evidenced by the fact that the Missouri Supreme Court's ruling was not unanimous and one judge dissented, Mr. Johnson's claims are *not* frivolous, and this Court should grant a COA. Rule 47A(a) requires the Court provide 14-day advance notice in the case of "an in forma pauperis appeal in which a certificate of appealability has been granted." Thus, if a COA is issued by this Court, Mr. Johnson is entitled to a stay for at least 14 days. This Court should grant a stay of execution to review Mr. Johnson's non-frivolous appeal.

## II. Mr. Johnson is Entitled to a Stay of Execution under *Hill v. McDonough*

Even under the more strenuous standard set forth in *Hill v. McDonough*, 547 U.S. 573 (2006), Mr. Johnson is entitled to a stay of execution because all three factors weigh in his favor. Considerations for granting a stay of execution include the prisoner's likelihood of success on the merits, the relative harm to the parties,

9

and the extent to which the petitioner has unnecessarily delayed bringing his claims. 547 U.S. at 584; *Nooner*, 491 F.3d at 808.

## A.   Mr. Johnson is likely to succeed on the merits of his claim.

Mr. Johnson does not have a rational understanding of the reason for his execution. *Madison*, 139 S. Ct. at 722; *Panetti,* 551 U.S. at 959-60; *Ford,* 477 U.S. at 417. Rather, he sincerely and irrationally believes the reason for his execution is that Satan is using the State of Missouri to execute him to bring about the end of the world. Mr. Johnson has confirmed this to be the reason because the voice of Satan told him so. R. Doc. 22-1, at 54. Further demonstrating this irrational understanding is Mr. Johnson's "belief that he potentially can change this plan by going into the judge and lawyers' heads or that the spirits of the underworld can influence the State to not execute him for Satan's purposes." *Id.* Mr. Johnson also has "delusional beliefs regarding his ability to live on after death in an animal's mind or as the undead[, which] are particularly troubling and indicate a lack of rational awareness of the finality of his punishment." *Id.*

This evidence, set forth in Dr. Agharkar's report and supported by Mr. Johnson's extensive medical records—recounting decades of severe mental illness, prescriptions for over 35 different psychiatric medications, and history of the same types of delusions expressed to Dr. Agharkar—was sufficient to establish the requisite threshold showing of incompetence. Indeed, the facts underpinning Mr.

10

Johnson's threshold showing were materially indistinguishable from those in *Panetti*, and Mr. Johnson submitted more evidence of his incompetence to establish the threshold showing than did the petitioner in *Panetti*. The Missouri Supreme Court's and the district court's rejection of Mr. Johnson's claim was legally and factually unreasonable in light of that evidence and the significant parallels between his case and *Panetti*.

      The only evidence submitted by the State to counter Mr. Johnson's lack of rational understanding of the reason for his execution was a one-and-a-half-page affidavit by a prison counselor. The problems with the state court's reliance on this evidence are many-fold, including:

- The counselor did not conduct a competency evaluation;
- She was prohibited by Missouri law from rendering any opinions; and,
- She spent less than half the time with Mr. Johnson than Dr. Agharkar spent evaluating him.

Given the above and her lack of experience and qualifications, the counselor applied the wrong standard, discussing Mr. Johnson's alleged awareness of the "nature" of his execution rather than his lack of rational understanding of the reason for it—a standard that was rejected by the Supreme Court in *Panetti*. Mr. Johnson is thus likely to succeed on the merits of his claim that he has made a

11

substantial threshold showing of incompetence and must be afforded a fair hearing at which to prove his incompetence.

Further supporting Mr. Johnson's likelihood to succeed on the merits of his claim, a judge dissented from the Missouri Supreme Court's unreasonable and erroneous denial of Mr. Johnson's state habeas petition. To show a probability of success on the merits sufficient to justify a stay of execution, the petitioner need only show a "fair ground for litigation," not "a greater than fifty per cent likelihood of success." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1017 (8th Cir. 2022). That a reasonable jurist disagreed with and dissented from the majority's legally and factually unreasonable opinion demonstrates that Mr. Johnson has met the requirement to show a "fair ground for litigation." The dissent also demonstrates that reasonable jurists could disagree with the district court's resolution of Mr. Johnson's incompetency claim, such that a COA should be granted.

1. **The District Court unreasonably applied *Cole*, thereby providing cover for the Missouri Supreme Court's due process violations.**

In addition to adopting the Missouri Supreme Court's erroneous and unreasonable findings of fact and its contrary and unreasonable application of clearly established federal law, the district court unreasonably interpreted this Court's decision in *Cole*. The district court concluded that *Cole* allows courts tasked only with determining a threshold showing of incompetence to conduct the ultimate merits review and dispose of a case by simply assuming a petitioner made

Appellate Case: 23-2664   Page: 12   Date Filed: 07/22/2023 Entry ID: 5298421

a threshold showing. Essentially, the district court overread *Cole* to categorically exclude federal review of *Panetti* claims when a state court conflates the threshold *Panetti* question with the separate and distinct ultimate merits question.

But *Cole* does not stand for a categorical proposition, nor does it carry the weight the district court placed on it. In *Barton v. Stange*, the Missouri Supreme Court followed the standards set forth *Ford, Panetti*, and *Madison* to find that the petitioner there had not met the threshold showing of incompetence. 959 F.3d 867 (8th Cir. 2020). Notably, this Court in *Barton* did not even mention *Cole*. Instead, this Court assessed the record before it, including the petitioner's own expert's findings indicating that the petitioner "demonstrated a simplistic, but rational understanding of the punishment he is about to receive and the reasons for it" and he "did not demonstrate any delusional thinking or loss of contact with reality and no perceptual disturbances were noted." *Id.* at 871-72. Because these conclusions indicated that the petitioner had a rational understanding of the reasons for his execution, the petitioner did not meet the threshold showing required by *Madison*. *Id.* at 872. The district court's application of *Cole* cannot be reconciled with this Court's *Barton* precedent.

Because the Missouri Supreme Court gave the petitioner in *Barton* proper process—assessing his claims against Supreme Court precedent and making a finding regarding the threshold question of incompetency without summarily

13

disposing of the claim pursuant to *Cole*—*Cole* does not stand for the proposition the district court claims it does. And because *Barton* successfully navigated the question of a threshold showing of incompetence without so much as a reference to *Cole*, it is not the polestar the district court makes it out to be.

The district court, like the Missouri Supreme Court before it and like Appellee in his briefing, failed to acknowledge the material differences between *Cole* and Mr. Johnson's case, both procedurally and factually. In *Cole*, the Missouri Supreme Court assumed the threshold showing of incompetence was met and then engaged in the ultimate merits analysis based on the evidence both sides had submitted. *Cole v. Roper*, 783 F.3d 707, 710 (8th Cir. 2015). The State's evidence included recordings of the petitioner discussing execution protocols of other states, issues from his own murder trial, and his faith that God would intercede to stop his execution. *Id.* at 711. It also included the medical notes of a licensed psychologist indicating no evidence of psychosis. *Id.* at 709.

In Mr. Johnson's case, on the other hand, the Missouri Supreme Court stated that he had not established the requisite threshold showing of incompetency, even though Dr. Agharkar's finding that Mr. Johnson is incompetent was not refuted by any qualified opinion to the contrary. Moreover, the Missouri Supreme Court and the district court in Mr. Johnson's case simply ignored and improperly discounted the (at least) 15 examples (including five of the *same* delusion) in the medical

14

records of the same types of delusions Mr. Johnson expressed to Dr. Agharkar, claiming they either did not exist or were not similar enough. And neither court addressed the fact that under Missouri law, Skaggs was not qualified to render a diagnosis of Mr. Johnson and could not render an expert opinion as to his competency. And as ignored from the reply filed below, the district court failed to account for the fact that the non-unanimous state court's reliance on Skaggs's opinion that the medicines were working is rebutted by the fact the medicines have again been changed; the counselor was wrong. There was no legitimate evidence contradicting Mr. Johnson's threshold showing of incompetency, and therefore no basis for either court to summarily dismiss Mr. Johnson's incompetency claim and request for a fair hearing.

> **B. Mr. Johnson did not delay in bringing his incompetency claim and at all times has acted with diligence.**

Mr. Johnson's incompetency claim did not become ripe until the execution date was set on April 19, 2023. *Davis*, 854 F.3d at 971 ("*Ford* and its progeny focus on the inmate's competency at the time of execution.") (citing *Martinez-Villareal*, 523 U.S. at 644-45); *Nooner*, 499 F.3d at 834 (citing *Panetti*, 551 U.S. at 942-43; *Martinez-Villareal*, 523 U.S. at 643). Once it became ripe, Mr. Johnson timely filed his state habeas petition under Missouri Supreme Court Rule 91 asserting his incompetence on May 16, 2023, less than a month after his death warrant was issued on April 19, 2023.

15

The Missouri Supreme Court denied his petition on June 8, 2023, and Mr. Johnson filed his federal habeas petition just 22 days later. The district court denied his federal habeas on July 17, 2023. Mr. Johnson comes now to this Court seeking a COA within one week of that denial.

Mr. Johnson has acted swiftly to raise the issue of his incompetence in each court, despite facing myriad roadblocks obtaining his own records. Even though he made numerous timely requests to the Department of Corrections for his own medical and mental health records, he did not receive them, and Mr. Johnson had to file both his state and federal habeas petitions without his complete records. Appellee knew or should have known Mr. Johnson had been requesting his own records since December 27, 2022, and by April 26, 2023, the most recent records Mr. Johnson had received were through November 16, 2022. R. Doc. 3-4, at 3-4. Mr. Johnson requested his records again on May 5, 2023, but the request was not answered until *after* Mr. Johnson's state habeas petition was denied. *Id.*

Mr. Johnson did not get access to any additional records until the Missouri Attorney General filed them as an exhibit in response to his state habeas petition. The Department of Corrections then waited until the afternoon of June 29, 2023, *21 days after the Missouri Supreme Court denied relief*, to send Mr. Johnson additional records. The records furnished then were only through May 26, 2022.

16

At a status hearing before the district court on July 10, 2023, Mr. Johnson was advised by the Attorney General that he should request his additional records directly through counsel, which Mr. Johnson immediately did. On July 12, the Attorney General promptly produced some records Mr. Johnson requested, but other records were missing. On July 20, Mr. Johnson received what appears to be complete and up-to-date records. These recent records contained additional evidence of Mr. Johnson's longstanding delusions, which support his claim of incompetence. Any delay perceived by this Court must be attributed to the Department of Correction's lack of cooperation, not Mr. Johnson. Mr. Johnson has been diligent and has not delayed bringing his claim.

### C. Mr. Johnson will be irreparably harmed if he is deprived of the opportunity to fully litigate his claim and is executed while incompetent.

Failing to grant a stay will irreparably harm Mr. Johnson. "[I]rreparable harm [that] will result if a stay is not granted . . . is necessarily present in capital cases." *Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring). The State's interest in executing Mr. Johnson must give way to Mr. Johnson's interest in being executed only when competent, and all parties' interest in a full determination of that issue. As the Supreme Court has made clear, once a petitioner makes a substantial threshold showing of incompetence, the Constitution entitles him to "a 'fair hearing' in accord with fundamental fairness." *Panetti,* 551

17

U.S. at 949 (citing *Ford*, 477 U.S. at 426, 424). The State's enforcement of Mr. Johnson's death sentence in the absence of a fair opportunity to prove his incompetency unquestionably violates *Ford* and *Panetti* as well as his constitutional right to due process under the Fourteenth Amendment. Because Mr. Johnson in fact does not have a rational understanding of the reason for his execution, his execution despite his incompetency will also subject him to cruel and unusual punishment in violation of the Eighth Amendment. *Madison,* 139 S. Ct. at 722; *Panetti*, 551 U.S. at 959-60; *Ford*, 477 U.S. at 409-10, 417.

Without this Court's intervention, Mr. Johnson will be executed while incompetent, before his incompetency claim can be fully litigated, contrary to the tenets of the Constitution and the mandates of the Supreme Court. *See Panetti*, 551 U.S. at 949. Therefore, this Court should issue a stay of execution pending review of Mr. Johnson's application for COA and review of his appeal on the merits.

### III. A stay is permitted under the All Writs Act.

The All Writs Act authorizes federal courts to "issue all writs necessary and appropriate to aid of the respective jurisdiction and agreeable usages and principles of law." 28 U.S.C.§ 1651. The Act permits Courts of Appeal to enjoin government conduct that threatens to upset their appellate jurisdiction. *See*, *e.g.*, *Michael v. I.N.S.*, 48 F.3d 657, 664 (2nd Cir. 1995). This power includes the authority to temporarily enjoin an execution to protect the court's jurisdiction over an appeal.

*See*, *e.g.*, *Diaz v. McDonough*, 472 F.3d 849, 851 (11th Cir. 2004). Because this Court is empowered to grant a stay under the All Writs Act pending an appeal, and because Mr. Johnson's application for COA and petition are meritorious, this Court should grant a stay of execution.

## CONCLUSION

For the foregoing reasons, Mr. Johnson prays this Honorable Court for a stay of execution pending its determination of his application for Certificate of Appealability and review of his appeal on the merits.

Respectfully submitted,

/s/ Kent E. Gipson
KENT E. GIPSON, #34524
Law Office of Kent Gipson, LLC
121 E. Gregory Blvd.
Kansas City, MO 64114
816-363-4400 • Fax 816-363-4300
Kent.gipson@kentgipsonlaw.com

/s/ Daniel E. Kirsch
Daniel E. Kirsch, E.D. Mo. Bar No.
57022MO, Mo. Bar No. 57022
Meredith Schlacter, Ny. Bar No. 5321625
Laurence E, Komp, Mo. Bar. No. 40446
Mandi Schenley, Oh. Bar No. 0102596
Federal Public Defender
Western District of Missouri
1000 Walnut Street, Suite 600
Kansas City, MO 64106
816-471-8282
daniel_kirsch@fd.org
meredith_schlacter@fd.org

19

laurence_komp@fd.org
mandi_schenley@fd.org

Attorneys for Petitioner

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document contains 4,354 words and is within the word limit of Fed. R. App. P. 27(d)(2)(A).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 and 14-point Times New Roman font.

/s/ Daniel E. Kirsch
Daniel E. Kirsch

# CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system. Through cooperation of the CM/ECF system, I hereby provide to all of counsel of record notice of this filing and the ability to view and download the foregoing pleading.

/s/ Daniel E. Kirsch
Daniel E. Kirsch