# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2664
_____

Johnny A. Johnson

*Petitioner - Appellant*

v.

David Vandergriff, Warden

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri

_____

Submitted: July 28, 2023
Filed: July 29, 2023

_____

**REVISED JUDGMENT**

Before SMITH, Chief Judge, COLLOTON, GRUENDER, BENTON, SHEPHERD, KELLY, ERICKSON, GRASZ, STRAS, and KOBES, Circuit Judges, En Banc.

This appeal comes before the court on appellant's application for a certificate of appealability and appellant's motion for stay of execution. The en banc court has carefully reviewed the original file of the district court, and the application for a certificate of appealability and the motion for stay are denied. The appeal is dismissed.

Judge Loken did not participate in the consideration or decision of the application for a certificate of appealability and the motion for stay of execution.

GRUENDER, Circuit Judge, with whom COLLOTON, BENTON, SHEPHERD, GRASZ, STRAS, and KOBES, Circuit Judges, join, concurring.

I concur in the *en banc* court's decision to deny the application for a certificate of appealability and to deny the motion for a stay of execution. *See* 28 U.S.C. § 2253(c). I write separately to address the points raised by the dissenting judges.

After the Supreme Court of Missouri set Johnny Johnson's execution for August 1, 2023, he filed a petition for a writ of habeas corpus in that court. He claimed that his impending execution would violate the Constitution because he is incompetent to be executed. *See Panetti v. Quarterman*, 551 U.S. 930 (2007); *Ford v. Wainwright*, 477 U.S. 399 (1986). The Supreme Court of Missouri determined that Johnson had failed to make the "substantial threshold showing of insanity required by *Panetti* and *Ford*" and denied his petition. *State ex rel. Johnson v. Vandergriff*, 668 S.W.3d 574, 579 (Mo. 2023). Johnson then sought relief in federal court under 28 U.S.C. § 2254, but the district court denied his petition and refused to issue a certificate of appealability. *See Johnson v. Vandergriff*, No. 4:23-cv-00845, 2023 WL 4560814, at *7 (E.D. Mo. July 17, 2023). Johnson next turned to this court. A panel granted his application for a certificate of appealability on his competency-to-be-executed claim and granted his motion for a stay of execution. The full court then granted the state's petition for rehearing *en banc*, vacating the panel's decisions. The court now denies both his application for a certificate of appealability and his motion for a stay of execution.

Three judges believe that Johnson's application for a certificate of appealability should have been granted because the Supreme Court of Missouri's decision was contrary to clearly established federal law, was an unreasonable application of federal law, and was based on an unreasonable determination of the facts. *See* § 2254(d). Respectfully, these conclusions rest on a misunderstanding of the United States Supreme Court's decision in *Panetti*, as well as on a failure to defer to facts determined by the state court. Applying the proper standards, no reasonable jurist could disagree with the district court's resolution of Johnson's constitutional claims. *See Buck v. Davis*, 580 U.S. 100, 115 (2017). Nor could they conclude that

the issues presented here are "adequate to deserve encouragement to proceed further." *See id.*

The Supreme Court of Missouri's decision was not "contrary to" *Panetti*. *See* § 2254(d)(1); *Dansby v. Payne*, 47 F.4th 647, 655 (8th Cir. 2022) ("A decision is contrary to federal law if it (1) contradicts a rule set forth in the Supreme Court's cases or (2) confronts a set of materially indistinguishable facts and arrives at a different result." (internal quotation marks omitted)). "Once a prisoner seeking a stay of execution has made a substantial threshold showing of insanity, the protection afforded by procedural due process includes a fair hearing in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (internal quotation marks omitted). This requires an "opportunity to be heard." *Id.* The Supreme Court of Missouri applied these principles. *Johnson*, 668 S.W.3d at 577; *see Woodford v. Visciotti*, 537 U.S. 19, 22-24 (2002) (applying "the presumption that state courts know and follow the law").

Judge Kelly emphasizes that the delusions Panetti suffered are similar in kind to Johnson's and that, in *Panetti*, the Supreme Court concluded that Panetti had made a substantial threshold showing of insanity. Importantly, the parties did not dispute that Panetti made a substantial threshold showing of insanity. *See Panetti*, 551 U.S. at 950 ("[Panetti] made this showing when he filed his [competency motion]—a fact disputed by no party, confirmed by the trial court's appointment of mental health experts . . . , and verified by our independent review of the record."). Having made that showing, the Supreme Court held that the "state court failed to provide [Panetti] with a constitutionally adequate opportunity to be heard." *Id.* at 952. It "refused to transcribe its proceedings," "on repeated occasions conveyed information to petitioner's counsel that turned out not to be true," engaged in *ex parte* communications with the state, failed to allow Panetti to make his case, probably violated state law, and "failed to provide [Panetti] with an adequate opportunity to submit expert evidence in response to the report filed by the court-appointed experts." *Id.* at 950-51. In light of these due-process violations, the Supreme Court did not defer to the state court's finding of competency and instead remanded the case for evidentiary development. *Id.* at 954, 962.

But here, the Supreme Court of Missouri determined that "Johnson has not demonstrated the substantial threshold showing of insanity required by *Panetti*." *Johnson*, 668 S.W.3d at 579. Nonetheless, even at the initial threshold stage, Johnson was still allowed to present the factfinder—here, the Supreme Court of Missouri—with a written record and full briefing. We have approved this cold-record procedure even when the petitioner *has* made a substantial threshold showing of insanity. *See Cole v. Roper*, 783 F.3d 707, 710-11 (8th Cir. 2015); *id.* at 713-14 (Gruender, J., joined by Beam, J., concurring) ("It was not an unreasonable application of *Ford* and *Panetti* for the Supreme Court of Missouri to reach the merits of Cole's competency claim on the basis of Cole's submissions, the state's response, and Cole's reply."). In other words, the Supreme Court of Missouri afforded Johnson process over and above that which *Panetti* required. Therefore, reasonable jurists could not debate whether the Supreme Court of Missouri's decision was contrary to *Panetti*.

Nor has Johnson made a substantial showing that the Supreme Court of Missouri's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). It is not enough for us to conclude we would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Rather, the state court's decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 583 U.S. ---, 138 S. Ct. 9, 11 (2017). And "a determination of a factual issue made by a State court shall be presumed to be correct" and can be rebutted only by "clear and convincing evidence." § 2254(e)(1).

The dissenting judges do not apply these principles, and reasonable jurists could not debate whether the state court's determination—that Dr. Agharkar's report lacks credibility when viewed in light of the state's evidence—was unreasonable. *See Johnson*, 668 S.W.3d at 579. Judge Kelly argues that the state's evidence does not speak to whether Johnson has a rational understanding of the reasons for his death sentence. According to her, it speaks only to his awareness of his impending execution. Indeed, that is the primary basis for Judge Kelly's argument that the state court unreasonably applied federal law. But Skaggs stated in her affidavit that

Johnson "appears to understand the nature of his upcoming execution." The "nature" of something is "the basic or inherent features of something," *New Oxford American Dictionary* (3d ed. 2010), so to understand the nature of an execution is to have a rational understanding of the reason for it. *See Madison v. Alabama*, 586 U.S. ----, 139 S. Ct. 718, 723 (2019) ("Citing *Ford* and *Panetti*, he argued that 'he no longer understands' the 'status of his case' or the '*nature of his conviction and sentence*.'" (emphasis added)); *Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand *the nature and object of the proceedings against him* . . . may not be subjected to a trial." (emphasis added)).

Moreover, the mere fact that the medical records and Skaggs's affidavit fail to explicitly state that Johnson has a rational understanding of the reasons for his death sentence does not mean that they do not undermine Dr. Agharkar's conclusion. Judge Kelly argues that Johnson's medical records and Skaggs's affidavit do not discredit Dr. Agharkar's statements about Johnson's delusional beliefs. But Dr. Agharkar's report was based on a single evaluation performed on February 24, 2023, whereas Skaggs meets with Johnson regularly. The facts in Skaggs's affidavit and in Johnson's medical records conflict with Dr. Agharkar's findings. Dr. Agharkar found on the day of the evaluation that Johnson has delusional beliefs that Satan is using Missouri to execute him to bring about the end of the world; Skaggs stated that Johnson has a history of auditory hallucinations but in recent months has reported that his auditory hallucinations are well managed by medication. Importantly, Johnson's medical records from *after* February 2023 reflect that at multiple mental-health appointments he has reported no auditory hallucinations and was not observed having hallucinations or delusions during the appointments.

Even though Dr. Agharkar observed delusions in February 2023 and Johnson's past medical records show that he had expressed delusions like the ones mentioned in the report, that does not mean that he presently lacks a rational understanding of the reason for his punishment. Judge Kelly states that the fact that Johnson did not express such delusional beliefs when meeting briefly with Skaggs does not automatically discredit Dr. Agharkar's observations. Perhaps, but the question is whether clear and convincing evidence rebuts the state court's finding

that the state's evidence discredits Dr. Agharkar's observations. No reasonable jurist could find that clear and convincing evidence does. And with the issues properly framed, no reasonable jurist could disagree with the district court's determination that the Supreme Court of Missouri's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. Johnson is not entitled to a certificate of appealability on his competency-to-be-executed claim.

For these reasons, I conclude that Johnson has not made a substantial showing of a denial of a constitutional right. I therefore concur in our denial of Johnson's application for a certificate of appealability as well as the denial of the motion for a stay of execution.

KELLY, Circuit Judge, with whom SMITH, Chief Judge, and ERICKSON, Circuit Judge, join, dissenting.

A panel of this court determined that "jurists of reason would find it debatable whether" Johnson's federal habeas petition "states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling," Ward v. Hobbs, 738 F.3d 915, 916 (8th Cir. 2013) (citations omitted), and it accordingly granted a certificate of appealability. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (describing the issuance of a certificate of appealability as a "jurisdictional prerequisite"). The same panel also granted a stay of execution to allow the parties to address the merits of Johnson's claim. Cf. Barefoot v. Estelle, 463 U.S. 880, 889 (1983) ("Approving the execution of a defendant before his appeal is decided on the merits would clearly be improper . . . ."). In my view, that stay was properly granted because Johnson has shown "a significant possibility" of succeeding on the merits of his habeas claim. Hill v. McDonough, 547 U.S. 573, 584 (2006). Respectfully, I dissent from the *en banc* court's decision, upon rehearing, to deny Johnson a certificate of appealability and to deny his motion for stay of execution.

Johnson ultimately seeks a determination by a federal court that he is not competent to be executed. See Ford v. Wainwright, 477 U.S. 399, 409–10 (1986) (holding that the Eighth Amendment "prohibits a State from carrying out a sentence

-6-

of death upon a prisoner who is insane"); see also Madison v. Alabama, 139 S. Ct. 718, 723 (2019) ("The resulting rule [from Ford], now stated as a matter of constitutional law, held a category of defendants defined by their mental state incompetent to be executed." (citation omitted)).  More specifically, evidence in the record indicates that Johnson, because of a "severe psychotic mental illness and a cognitively impaired brain," possesses the "delusional belief" that the "true purpose" of his impending execution is "to do Satan's bidding to bring about the end of the world as part of spiritual warfare between Satan and the forces of good."  And Johnson argues that because he "does not rationally understand the reason for his execution," executing him would violate the Eighth Amendment.  See Panetti v. Quarterman, 551 U.S. 930, 958 (2007).  Under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Johnson is entitled to relief if he demonstrates that the Supreme Court of Missouri's adjudication of his federal incompetency-to-be-executed claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).  I believe Johnson has likely met this burden.[1]

To start, a state court decision is "contrary to . . . clearly established Federal law," id. § 2254(d)(1), if the state court "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result."  Zornes v. Bolin, 37 F.4th 1411, 1414 (8th Cir. 2022) (citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000)).  In Panetti v. Quarterman, the Supreme Court made clear that "[o]nce a prisoner seeking a stay of execution has made a 'substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness."  551 U.S. at 949 (quoting Ford, 477 U.S. at 426 (Powell, J., concurring in

---

[1]Whether Johnson is ultimately entitled to federal habeas relief hinges, of course, on whether he can actually clear AEDPA's hurdles.  But that is a merits question that has not yet been presented to this court, and is why the panel entered a stay of execution.

-7-

Appellate Case: 23-2664     Page: 7     Date Filed: 07/29/2023 Entry ID: 5301056

part and concurring in the judgment)). And based on its own "independent review of the record," the Court concluded that the prisoner in that case had made a "substantial threshold showing" when he filed a "Motion to Determine Competency" in state court that included "extensive evidence of mental dysfunction" as well as "pointed observations" from a psychologist and a law professor "demonstrat[ing]" that the prisoner "did not understand the reasons he was about to be executed." Id. at 938, 950.

Like the prisoner in Panetti, Johnson raised a Ford-based claim in state court that he is not competent to be executed. Like the prisoner's state-court motion in Panetti, Johnson's state-court petition for writ of habeas corpus included a thorough report from a medical doctor summarizing Johnson's "long-documented history of psychotic mental illness," including schizophrenia, and describing his "profoundly delusional inner world," which, according to that expert, prevents Johnson from having a "rational understanding of the link between his crime and his punishment." Indeed, Johnson's delusional beliefs—he thinks that "Satan is "'using' the State of Missouri to execute him in order to bring about the end of the world"—are strikingly similar to the ones described in Panetti. See 551 U.S. at 954 (noting that the prisoner had a "genuine delusion" that his execution was "part of spiritual warfare between the demons and the forces of the darkness and God and the angels and the forces of light" (cleaned up)). Johnson's evidence of incompetency was materially indistinguishable from the evidence deemed sufficient in Panetti.[2] Yet the Supreme Court of Missouri here concluded that Johnson failed to "demonstrate[] the substantial threshold showing of insanity required by Panetti and Ford." State ex rel. Johnson v. Vandergriff, 668 S.W.3d 574, 579 (Mo. banc 2023).

---

[2]Indeed, Johnson's threshold evidence—which consisted of voluminous medical records documenting his decades-long struggle with mental illness and a 55-page report detailing the observations made by a psychiatrist during a two-and-a-half-hour-long "face-to-face clinical interview" with Johnson—is arguably even stronger than the incompetency-related evidence at issue in Panetti. See 551 U.S. at 970 (Thomas, J., dissenting) (noting that the "Renewed Motion to Determine Competency" that Panetti filed in state court included a "one-page letter" from a doctor to Panetti's counsel "describing" the former's "85-minute 'preliminary evaluation' of Panetti" that "contain[ed] no diagnosis" and "d[id] not discuss whether Panetti understood why he was being executed").

-8-

Appellate Case: 23-2664   Page: 8   Date Filed: 07/29/2023 Entry ID: 5301056

Because this decision is clearly contrary to Panetti, Johnson is entitled to a review of his "underlying incompetency claim" by a federal court that is "unencumbered by the deference AEDPA normally requires." Panetti, 551 U.S. at 948; see Brumfield v. Cain, 576 U.S. 306, 312 (2015) (noting that a habeas petitioner need only satisfy one of § 2254(d)'s prongs). But I also believe the Supreme Court of Missouri's dismissal of Johnson's incompetency claim "involved an unreasonable application of" federal law as well. 28 U.S.C. § 2254(d)(1); see Munt v. Grandlienard, 829 F.3d 610, 614 (8th Cir. 2016) ("The 'contrary to' clause and 'unreasonable application' clause of § 2254(d)(1) have 'independent meaning.'") (citation omitted)).

It was unreasonable for the Supreme Court of Missouri to conclude that Johnson's evidence, when weighed against the evidence the State offered in response, did not "demonstrate[] the substantial threshold showing of insanity required by Panetti and Ford." See Munt, 829 F.3d at 614 ("An 'unreasonable application' of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but . . . unreasonably applies it to the facts of the particular case . . . ."). As the United States Supreme Court has explained, the "critical question" when addressing a Ford-based incompetency claim is "whether a 'prisoner's mental state is so distorted by a mental illness' that he lacks a 'rational understanding' of 'the State's rationale for his execution.'" Madison, 139 S. Ct. at 723 (cleaned up) (quoting Panetti, 551 U.S. at 958–59)). And as part of his state-court habeas petition, Johnson proffered a thorough psychiatric report that determined he does, in fact, lack a "rational understanding" of "the reason for his execution" and "the finality of his punishment."

Missouri countered Johnson's expert report with a one-and-a-half-page affidavit from Ashley Skaggs, the "Institutional Chief of Mental Health" at the prison where Johnson is incarcerated. But nowhere in that affidavit does Skaggs attest that Johnson is competent to be executed under the applicable federal-law standard.³ See Madison, 139 S. Ct. at 731 ("The sole question on which [a death-

---

³Judge Gruender's opinion suggests that Skaggs's statement saying Johnson "appears to understand the nature of his upcoming execution" meets the Panetti

-9-

row inmate's] competency depends is whether he can reach a 'rational understanding' of why the State wants to execute him." (quoting Panetti, 551 U.S. at 958)). Missouri also does not dispute that Skaggs, who is a licensed professional counselor, is not qualified under state law to even make such a competency determination. Moreover, Skaggs's statements in her affidavit—she notes that she "regularly . . . assess[es]" Johnson's "mental health needs"; that Johnson's "auditory hallucinations are well managed by medication"; and that Johnson "has made statements about his upcoming execution, his communications with his attorneys, and the status of his legal appeals"—do not provide meaningful insight into whether Johnson "grasp[s] the . . . meaning and purpose" of his execution or rationally understands the "link between his crime and its punishment." Madison, 139 S. Ct. at 723 (cleaned up) (quoting Panetti, 551 U.S. at 958, 960); see Panetti, 551 U.S. at 959 ("A prisoner's *awareness* of the State's rationale for an execution is not the same as a *rational understanding* of it." (emphasis added)).

In short, the Supreme Court of Missouri concluded that Johnson failed to make the requisite "threshold showing" of incompetency based on observations from a prison mental-health counselor that are largely irrelevant under the governing legal standard for competency in this context. Cf. Finch v. Payne, 983 F.3d 973, 981 (8th Cir. 2020) (concluding that the Arkansas Supreme Court unreasonably applied clearly established federal law because it "failed to identify" a valid basis for finding that a defendant did not unequivocally invoke his right to self-representation under the governing legal standard). This conclusion therefore involved an unreasonable application of Ford, Panetti, and Madison—all of which set out the proper standard for determining whether an inmate is competent for execution.

Finally, Missouri claims that the Supreme Court of Missouri's decision was based on "credibility determinations" that are "entitled to substantial deference from federal court review." Notably, the Court did not find that Johnson is, in fact, competent to be executed. Cf. Cole v. Roper, 783 F.3d 707, 710 (8th Cir. 2015) (affording deference to the Supreme Court of Missouri's express "finding" that a

---

standard. It does not. Putting aside her lack of qualifications, Skaggs not only fails to state her view affirmatively or support it with more than "observations," her impressions do not meet the exacting requirements of Panetti.

-10-

death-row inmate "rationally understood his death sentence and the reasons for it"). Rather, it determined that Johnson's expert psychiatric report, "when viewed in light of the State's evidence," "lack[ed]" sufficient "credibility" to establish "a substantial threshold showing of insanity." State ex rel. Johnson, 668 S.W.3d at 579. That is, the Supreme Court of Missouri reasoned that because the "allegations of Johnson's delusions" in the report were not supported by the State's evidence, the report's ultimate determination that Johnson lacks a "rational understanding of the link between his crime and his punishment" was likewise not credible. Thus, according to the Court, Johnson had failed to meet his threshold burden of production under Panetti.

But that "credibility" determination was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In reaching its conclusion that Johnson's expert psychiatric report "lack[ed] credibility," the Supreme Court of Missouri first pointed to statements Johnson made in September 2020 to a mental health services provider about his "death row status" and the shame he felt for his crime, as well as to statements he made in May 2023 about the status of "his case." State ex rel. Johnson, 668 S.W.3d at 578–79. But even if these statements suggest that Johnson is aware of his impending execution, they do not speak to whether he has a "rational understanding of the reasons for his death sentence," or whether he rationally "grasp[s]" the connection between his "crime and its punishment." Madison, 139 S. Ct. at 723. Indeed, such statements are entirely consistent with a worldview that is nonetheless clouded by irrational delusions, especially given Johnson's evidence that he can "voice[]" a "rational answer" on occasion yet "remains floridly psychotic." Cf. Brumfield, 576 U.S. at 314 (concluding that a state court's rejection of a prisoner's Atkins claim based on evidence that was "entirely consistent with intellectual disability" amounted to an "unreasonable determination of the facts" under AEDPA).

Next, the Supreme Court of Missouri noted that Johnson's "most recent medical records indicate" that he has been "free of auditory hallucinations since taking medication." State ex rel. Johnson, 668 S.W.3d at 579. And Skaggs similarly attested in her affidavit that Johnson "ha[d] reported that his auditory hallucinations

-11-

are well managed by medication." But treating a symptom of mental illness is not the same as curing someone of mental illness.[4] See Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014) ("[S]ymptoms and mental illness are not one in the same."). The Court "therefore could not reasonably infer from" the temporary absence of auditory hallucinations that Johnson no longer suffers from psychotic delusions that render him incompetent to be executed. Brumfield, 576 U.S. at 316.

The Court then determined that "[n]either Skaggs's affidavit . . . nor Johnson's medical records" supported the "allegations of . . . delusions" in Johnson's expert psychiatric report. State ex rel. Johnson, 668 S.W.3d at 579; see id. at 579 n.7 ("[T]he persuasiveness of [Johnson's expert] report is significantly weakened by Skaggs's report and Johnson's medical records, which do not include a single mention of the type of delusions that [Johnson's expert] alleges."). But the record clearly indicates that Johnson has on more than one occasion expressed delusions similar to the ones that he expressed to his expert psychiatrist—namely, that "the world will end when he dies." And the fact that Johnson did not express such "delusional beliefs" when meeting briefly with Skaggs does not automatically discredit Johnson's expert's observations, especially in light of Johnson's "long history of hallucinations, delusions, and disorganized thinking." In response to Johnson's expert report, the State offered no evidence to support the conclusion that Johnson was competent to be executed. The conclusion that Johnson failed to make a substantial threshold showing of incompetency was "based on an unreasonable determination of the facts" given the evidence presented.

---

[4]Judge Gruender's opinion, like the State, makes much of the fact that Dr. Agharkar's report is based on "a single evaluation" of Johnson, while Skaggs had "regular" contact with Johnson over a longer period of time. Myopic focus on this distinction ignores that Dr. Agharkar is a medical doctor who conducted an evaluation for the specific purpose of determining Johnson's competence for execution. Skaggs spoke with Johnson for a few minutes at a time for purposes of ongoing treatment. At no point did Skaggs conduct an evaluation or interview of any kind to determine whether Johnson was competent to be executed. The State's evidence simply failed to directly address the issue of competency. The state court's determination that Dr. Agharkar's report was not credible—at the initial "substantial threshold" stage— was unreasonable. At a minimum, reasonable jurists could, and in fact do, debate the issue.

-12-

Appellate Case: 23-2664     Page: 12     Date Filed: 07/29/2023 Entry ID: 5301056

The Supreme Court of Missouri, in sum, concluded not that Johnson was competent to be executed. Instead, it concluded that Johnson had not even demonstrated a threshold showing of incompetency. That decision is contrary to Panetti, involved an unreasonable application of Ford and Panetti, and was based on an unreasonable determination of the facts. For these reasons, Johnson has shown a sufficient likelihood of success on the merits of his Ford-based incompetency claim and is therefore entitled to a stay of execution.

Finally, in seeking vacatur of the stay, Missouri makes much of its interest in carrying out Johnson's sentence and Johnson's purported "delay" in raising his incompetency claim. But it is worth emphasizing that Johnson's claim became ripe only when Missouri set a date for his execution. By its very nature, therefore, a claim that a condemned prisoner is incompetent will be filed close in time to the recently scheduled date of execution. Whatever interests Missouri and the public have in seeing a lawful sentence carried out, see Hill, 547 U.S. at 584, those interests necessarily take on a different hue at this stage of the proceedings. Here, the issue before us is not whether Johnson's sentence itself is lawful, but whether it is lawful—indeed, constitutional—to carry out that sentence *at this time*. The United States Supreme Court has been clear: "[t]he Eighth Amendment . . . forbid[s] executing a prisoner whose mental illness makes him unable to 'reach a rational understanding of the reason for [his] execution.'" Madison, 139 S. Ct. at 726; see also Ford, 477 U.S. at 410 ("The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane."). And if Johnson lacks a "rational understanding" of the reason for his execution, he is not competent to be executed. Any proceedings necessary to make this determination do not have to be prolonged, but they will take time to allow the decision maker to gather and assess all the information relevant to that determination. The Constitution requires no less.

ERICKSON, Circuit Judge, with whom KELLY, Circuit Judge, joins, dissenting.

I join fully in Judge Kelly's dissent and write separately to emphasize my belief that the process afforded Johnson fails to meet the minimum procedural due process requirements under the Constitution. In Cole v. Roper, 783 F.3d 707 (8th Cir. 2015), and in cases after it, this Court has recognized that the process followed

by the Missouri Supreme Court is not a procedurally unreasonable application of Panetti and Ford. But the elasticity of this process must be subject to some limits, and I believe this case crosses the line.

Here, we are confronted with a case in which credible questions of a longstanding nature exist about the extent and nature of Johnson's rational understanding of the reason for his execution. The Missouri Supreme Court concluded that he has such an understanding and bases this conclusion on a determination that Ashley Skagg's affidavit supported by Johnson's quite summary prison medical record has greater credibility than Dr. Agharkar's testing, interviews, and expert report. I believe the Constitution requires more than a fiat declaration that one piece of paper is more credible than another. This is not a case where a hearing was held someplace, by someone, and evidence was presented and developed from which the finder of fact or a reviewing court can make rational determinations. Rather, we are confronted with competing evidence in the form of an expert opinion and its supporting documents and testing, and an affidavit and prison medical records. No one has ever been asked to explain his or her opinions or observations. No trier of fact has ever had the chance to dig into the underlying reasons for the opinions. Instead, this process required the ultimate finder of fact to make credibility determinations by weighing competing pieces of paper. While the Constitution does not require a full trial, it seems to me that it does require something more than what happened here.

Under the circumstances that are so ably laid out in Judge Kelly's dissent, the credibility findings of the Missouri Supreme Court are, under 28 U.S.C. § 2254(d)(2), an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." For these additional reasons, I respectfully dissent.

_____

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.
_____
           /s/ Michael E. Gans